**ELAINE FLANDERS, Plaintiff**
**v.**
**SHELL SEEKERS, INC. and CHARLES CONSOLVO,**
**Defendants**

Civ. No. 94/93

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

August 11, 1998

WINSTON S. TAYLOR, ESQ., St. Thomas, U.S.V.I., *for plaintiff*

DAVID E. NICHOLS, ESQ., St. Thomas, U.S.V.I., *for defendants*

HODGE, *Judge*

## MEMORANDUM OPINION

### I. THE INTRODUCTION

The question presented is whether the Court should grant the defendants' Rule 50 FED.R.CIV.P. motion and take the case away from the jury at the close of all the evidence in this tort case, in which the plaintiff alleges wrongful discharge and defamation against the defendants. For the reasons that follow, the defendants' Rule 50 Motion for Judgment as a Matter of Law will be granted.

On May 18, 1998, the jury was impanelled in this matter, and on May 20, 1998 the jury was sworn and the trial commenced. At the close of the plaintiff's case, the defendants made a Motion for Judgment as a Matter of Law pursuant to Rule 50 of the Federal Rules of Civil Procedure on the plaintiff's claims of Wrongful Discharge and Defamation. The Court denied said motion, and the trial proceeded with the defendants' case. After all the evidence was completed on May 21, 1998, the defendants renewed their Rule 50 Motion for Judgment as a Matter of Law.

### II. THE FACTS

On or about January of 1979, the plaintiff was employed as a sales clerk in the T-shirt department of Captain's Corner, a store owned by defendant Shell Seekers, Inc.. The plaintiff's duties as a sales clerk required her to handle large sums of money.

In May of 1992, the defendants became aware of certain cash shortages and instituted an internal investigation. Upon conclusion of the investigation, the defendants determined that Twenty-

one Thousand Three Hundred Ninety-three Dollars ($ 21,393.00) had been stolen from the cash register located in the T-shirt department of Captain's Corner. The investigation further revealed that all shortages related to the plaintiff's control number; that on the days of the cash shortages the plaintiff was the only employee ringing sales on said cash register; that the plaintiff converted credit card purchases to cash sales; that the plaintiff substituted small sales slips for large ones; and that no cash shortages occurred on days when the plaintiff was not working. Defendant Consolvo, the president of defendant Shell Seekers, Inc., after being duly convinced that the plaintiff had embezzled the money from defendant Shell Seekers, Inc., confronted the plaintiff, who admitted her culpability, and he proposed a settlement. Pursuant to the terms of the proposed settlement, the plaintiff would be terminated, but the defendants would forego filing any criminal complaint against the plaintiff, and in exchange, the plaintiff would waive her rights to Seven Thousand Six Hundred Sixty-three Dollars and Sixty Cents ($ 7, 663.60) accrued in Shell Seeker's, Inc. retirement pension plan and Nine Hundred Ninety Dollars ($ 990.00) in sick pay. Although the plaintiff indicated her willingness to execute the settlement on numerous occasions, including her request for various changes in the language of the agreement, she failed to execute the documents. Instead, the plaintiff retained counsel who accused the defendants of wrongful discharge and defamation. Consequently, the defendants effectuated the plaintiff's termination, notified the other employees of her termination for embezzlement, and referred the matter to the police for investigation. Although the investigator recommended the plaintiff's prosecution for embezzlement, the Office of the Attorney General declined to prosecute the case.

Meanwhile, the plaintiff filed an application for Unemployment Insurance on July 20, 1992, which was denied on August 20, 1992 when the Virgin Islands Employment Security Agency determined that the plaintiff was discharged for misconduct. Thereafter, on January 28, 1993, the plaintiff filed this complaint alleging that the defendants wrongfully terminated her employment and defamed her character, and demanded a trial by jury. The defendants denied both counts, citing the law that makes discharge for misconduct

lawful, and citing privileged publication and truth as the absolute defense to the defamation charge.

## III. THE LAW AND ANALYSIS

A. Rule 50

Rule 50 of the Federal Rules of Civil Procedure states in pertinent part:

(a)(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party. . .

(2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. . .

In ruling on such a motion, the Court must view the evidence in the light most favorable to the non-moving party. *Williams v. Rene*, 32 V.I. 216, 886 F. Supp. 1214 (D.V.I. 1995), *rev'd* on other grounds, 33 V.I. 297, 72 F.3d 1096 (3d Cir. 1995). Thus, when the evidence adduced at trial is viewed in the light most favorable to the non-moving party, and where a reasonable jury could not conclude that the non-moving party sustained their burden, and where the record reveals that the moving party is entitled to judgment as a matter of law, the Court may withhold said case from the jury and enter judgment in favor of the prevailing party.

B. The Wrongful Discharge Claim

The grounds for lawful discharge are enumerated in V.I. Code Ann. tit. 24, § 76 (1997) which states that:

(a)   Unless modified by contract, an employer may dismiss any employee:

(1) who engages in a business which conflicts with his duties to his employer;

(2) whose insolent or offensive conduct toward a customer of the employer injures the employer's business;

(3) whose use of intoxicants or controlled substances interferes with the proper discharge of his duties;

(4) who wilfully and intentionally disobeys reasonable and lawful rules, orders, and instructions of the employer; provided, however, the employer shall not bar an employee from patronizing the employer's business after the employee's working hours are completed;

(5) who performs his work assignments in a negligent manner;

(6) whose continuous absences from his place of employment affect the interests of his employer;

(7) who is incompetent or inefficient, thereby impairing his usefulness to his employer;

(8) who is dishonest; or

(9) whose conduct is such that it leads to the refusal, reluctance or inability of other employees to work with him.

The law is clear that a claim for wrongful discharge is not precluded merely because there was a denial of unemployment benefits. *See Charles v. The Daily News Publishing, Co.*, 29 V.I. 34, 37 (Terr.Ct. 1994). Thus, the plaintiff's wrongful discharge claim is properly before the Court.

The crux of the plaintiff's wrongful discharge claim is whether the defendant discharged the plaintiff for lawful reasons, including dishonesty and negligence, as authorized by the Wrongful Discharge Act. If not, the discharge is wrongful. Here, however, the plaintiff has established beyond any doubt that the basis for the discharge was the theft of money by the plaintiff from the defendant business. Although the plaintiff has denied that she stole any money from the business, the evidence shows that the plaintiff's employee number was used to execute the dubious transactions; that the plaintiff's handwriting has been identified as that recorded on questionable receipts; that the plaintiff was at work at the time of all incidents of theft; that the money was only missing on the plaintiff's shift; that the theft always occurred at the back cash register away from the front part of the store and under

the plaintiff's watch; and that cash receipts were removed and changed for credit card transactions by the plaintiff.

Moreover, if some other employee had used the plaintiff's card or employee number, the plaintiff was grossly negligent in failing to secure her employment documents, and was reckless in allowing unaccountable collections chargeable to her; for allowing wrong charges for items sold; for recording only portions of sales collections; and for being unable to account for the missing funds which exceeded Thirteen Thousand Dollars ($ 13,000.00) in a three month period from her cash register.

■ Accordingly, the plaintiff's discharge for dishonesty was lawful under V.I. Code Ann. tit. 24, § 76(a)(8) (1997) and her discharge for negligence was lawful under V.I. Code Ann. tit. 24, § 76(a)(5) (1997). The defendants are therefore entitled to judgment as a matter of law on this claim, since no reasonable jury could conclude otherwise.

C. The Defamation Claim

■ A statement is defamatory if it tends to so harm the reputation of another that his standing in the community is lowered and it deters third persons from associating or dealing with that person. *Cohen v. Raedler*, 17 V.I. 46 (Terr.Ct.1980). In order to recover on a claim of defamation, the plaintiff must prove (1) that defendants made a false and defamatory statement concerning another; (2) that said communication was an unprivileged publication to a third party; (3) that the defendants were at fault amounting to at least an act of negligence; and (4) that the publication caused harm to the plaintiff. *See* Restatement (Second) of Torts § 558 (1977).

1. Truth as an Absolute Defense

■ Truth is an absolute defense to a defamation claim and the defendant bears the burden on that issue. *Cohen, supra.* In this case, the defendants have established beyond any doubt that the plaintiff embezzled money from the business. The record contains twenty-two (22) exhibits, in addition to the testimonies of witnesses, which prove that the plaintiff was the person who committed the theft, and that she admitted it to defendant Consolvo.

Indeed, it is the plaintiff who bears the burden of proving the falsity and defamatory nature of the statement, and the plaintiff has failed to prove that she did not commit the theft. With the exception of her general denial, the plaintiff has proffered no evidence that would implicate another perpetrator. Moreover, the embezzlement was only detected because the plaintiff, on her day off, called the office to state that she had a "cash overage" the day before and had failed to report it. When the supervisor could not find the alleged overage, a detailed audit revealed the theft. Plaintiff failed to explain why she reported an overage which didn't exist—a clear indication that she made a miscalculation in her embezzlement scheme, and called during her day off to cover her tracks if an overage was discovered. No other employee was involved in that scheme and she stands alone as the perpetrator. Thus, truth prevails as the absolute defense.

### 2. Conditional Privilege

■ The record established that defendant Consolvo reluctantly reported the theft to police, after trying to resolve the matter amicably with the plaintiff, and that he communicated details of the theft only to employees of the business. Even if this publication was found to be false and defamatory, which it is not, the plaintiff still could not recover on the defamation claim because the communication to police and the employees is conditionally · privileged and the privilege was not abused.

RESTATEMENT (SECOND) OF TORTS § 593 (1977) states:

One who publishes defamatory matter concerning another is not liable for the publication if

(a) the matter is published upon an occasion that makes it conditionally privileged and

(b) the privilege is not abused.

A conditional privilege exists "if the circumstances induce a correct or reasonable belief that (a) there is information that affects a sufficiently important interest of the publisher, and (b) the recipient's knowledge of the defamatory matter will be of service in the lawful protection of the interest." RESTATEMENT (SECOND) OF TORTS § 594 (1977). Defendant Consolvo's limited communications to police and his employees were made to protect defendants'

69

viable business interest, and as such, were privileged. Furthermore, the record does not contain any other communications made by the defendants to anyone other than the police or his employees; thus, the defendants did not abuse the privilege and may not be held liable for those communications.

Consequently, since the plaintiff has not proven the existence of a false or defamatory statement, nor an unprivileged communication, the defendants are not at fault or liable for any detrimental harm suffered by the plaintiff, and the plaintiff may not recover. The defendants are therefore also entitled to judgment as a matter of law on the defamation claim, as any reasonable jury would conclude.

## IV. CONCLUSION

Based on the foregoing, it has been established beyond any doubt that the plaintiff has failed to prove any facts constituting wrongful discharge or defamation; that her discharge was lawful; that the defendants' statements against her were truthful and privileged; and that the defendants are entitled to judgment as a matter of law. The Court was therefore compelled to take the case away from the jury at the close of all the evidence, pursuant to Rule 50 FED.R.CIV.P., since no reasonable jury could have concluded otherwise.

Accordingly, judgment will be entered in favor of the defendants. The plaintiff, as the losing party, must reimburse this Court for the jury expenses herein, pursuant to V.I. CODE ANN. tit. 4, § 521(b) (1997) and V.I. CODE ANN . tit. 5, § 355 (1997). In addition, the plaintiff must pay the reasonable attorneys fees and costs of the defendants, pursuant to V.I. CODE ANN. tit. 5, § 541 (1997), as explained in the Memorandum regarding Attorneys Fees and Costs filed herein.